UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| ANTONIUS CARTER, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) NO. 3:22-cv-00730 |
| MIMI LAWRENCE, et al., | ) |
| Defendants. | ) |

# MEMORANDUM OPINION

Antonius Carter, a state inmate in custody at the Laurel County Correctional Center in London, Kentucky,[1] filed a pro se Complaint for violation of civil rights under 42 U.S.C. § 1983 (Doc. No. 1) challenging the conditions of his previous confinement in the Davidson County Sheriff's Office (DCSO). He also filed an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2).

The case is before the Court for ruling on Plaintiff's IFP application and for initial screening under the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

---

[1] The Court takes judicial notice of (1) its own records showing that Plaintiff is currently in federal custody awaiting sentencing, see United States v. Carter, No. 3:21-cr-00226, Doc. No. 46 (M.D. Tenn. Mar. 17, 2023), and (2) the Davidson County Criminal Court's online database, https://sci.ccc.nashville.gov/Search/CriminalHistory?P_CASE_IDENTIFIER=ANTONIUS%5ECARTER%5E03161990%5E596560 (last visited March 22, 2023), showing his active sentences on multiple state convictions. See ARJN #3 v. Cooper, 517 F. Supp. 3d 732, 747 (M.D. Tenn. 2021) (noting that "the Court may take judicial notice of public records and government documents available from reliable sources on the Internet").

## I. APPLICATION TO PROCEED IFP

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because it is apparent from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, that application (Doc. No. 2) will be **GRANTED** by separate order.

## II. INITIAL REVIEW

### A. Legal Standard

The Court must conduct an initial review and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e. Review of the Complaint to determine whether it states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" Tackett v. M & G Polymers, USA, LLC, 561F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure,

Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975)).

Plaintiff sues under 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a viable Section 1983 claim, Plaintiff must allege (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. Carl v. Muskegon Cnty., 763 F.3d 592, 595 (6th Cir. 2014).

**B. Allegations and Claims**

Plaintiff claims violations of his Eighth Amendment rights to be free from cruel and unusual punishments and excessive force (Doc. No. 1 at 6), naming as Defendants multiple DCSO employees (named Yevin, Joseph, Bolden, Goodale, Lane, Boldie, Bryant, and Thomas) and one employee of "Wellpath," Nurse Lawrence. (Id. at 2–3).

Plaintiff alleges that Nurse Lawrence was distracted while distributing medications to inmates on May 5, 2022, and accidentally gave him an incorrect pill among his correct medications. (Id. at 6). He had an adverse reaction and was evaluated shortly thereafter by other nurses, who determined that he needed to be seen in the emergency room. (Id. at 7). After returning from the hospital, Plaintiff objected to Nurse Lawrence continuing to distribute his medications "because [he] kn[e]w her personally," as they were "in a dating relationship and it went bad [be]cause she played with [his] heart and feelings and so [he] stole money from her and disappeared." (Id.). Plaintiff did not know that Lawrence worked for Wellpath at the DCSO until

3

he became an inmate, but he has since felt that she is retaliating against him for stealing from her. (Id.).

On May 20, 2022, Plaintiff and Lawrence had a disagreement about his medications. Cpl. Yevin intervened when Lawrence refused to hand the medications to Plaintiff through the pieflap in his cell door. (Id. at 8). However, Plaintiff insisted that it was Lawrence's job and she should hand him his medications instead of Cpl. Yevin. (Id. at 8). When Lawrence again refused and walked off, Plaintiff told Yevin to call Nurse James, who had told Plaintiff he would distribute whatever medications Lawrence refused to distribute. (Id.). Cpl. Yevin refused that request and slammed the pieflap which Plaintiff was holding open, causing the water Plaintiff was also holding in that hand to spill both inside and outside of his cell. (Id.). Cpl. Yevin claimed that the water got on him and on an unnamed nurse, and therefore wrote Plaintiff up for "Assault on Officer and Nurse and threatening and disrespect[ful] behavior." (Id.).

The next day, May 21, at approximately 4:15 a.m., Plaintiff was awakened, handcuffed, and moved to another cell "that was nasty and filthy and had dried urine and [feces] all over the floor." (Id.). The cell smelled of human filth and was not cleaned before Plaintiff's placement there, nor was he allowed to clean it after arriving. (Id.). Cpl. Yevin and Cpl. Bolden threatened Plaintiff "and made [him] get on the nasty cell floor on [his] stomach by the toilet" while they "took all [his] clothes, socks, jumpsuit, everything while constantly threat[en]ing to smash [his] face in the floor if [he] breathe[d] wrong in front of Lt. Lane and Sgt. Goodale." (Id. at 8–9). He was written up that day for "Contraband, Possession of having a tablet in [his] cell," even though an officer had given him the tablet, and another inmate caught with a tablet was not written up. (Id. at 10). When Plaintiff needed medical attention for chest pains later that night, he was escorted to the Medical Triage Room barefoot and in full restraints, wearing only a t-shirt and boxer shorts.

(Id. at 9). Lt. Lane and Sgt. Goodale approved of his escort to medical without a jumpsuit or shoes. (Id.). Plaintiff did not receive his jumpsuit, socks, and shoes from his confiscated property until the following day, May 22. (Id.).

Plaintiff was made to lie face-down on the filthy floor "4 or 5 times a day," due to being "on property restrictions and pieflap restriction." (Id. at 9). While he remained on property restriction, he did not have access to a towel, soap, shower shoes, washrag, or clean clothes and so was not able to shower until May 25, when Sgt. Bryant ordered that he be provided with these items so that he could shower. (Id. at 9–10). Plaintiff contracted "jock itch" due to the delay in showering, resulting in rashes between his thighs that bled and required the use of a prescription cream. (Id. at 10).

On May 26, Plaintiff was denied the "chance to send [his] laundry out like everyone else" because Cpl. Yevin refused to retrieve the laundry from Plaintiff's confiscated property, despite being ordered to do so by Sgt. Bryant. (Id. at 10–11). On May 28, 2022, Plaintiff again encountered Nurse Lawrence during the distribution of inmate medications. (Id. at 11). Because of their history and Lawrence's friendship with other DCSO staff members, Plaintiff asserts that he was discriminated against and treated unfairly. (Id.). As relief, he seeks damages and the dismissal of his federal and state criminal cases. (Id. at 12).

**C. Analysis**

Plaintiff alleges that he was mistreated at DCSO compared to other inmates, and that his mistreatment was motivated by discrimination and retaliation due to his history with Nurse Lawrence. However, he does not claim any constitutional violation corresponding to these discriminatory and retaliatory motives, and the Court declines to create such a claim for him. See

Brown, 415 F. App'x at 613. Plaintiff does specify two Eighth Amendment violations as a result of his mistreatment: cruel and unusual punishment and excessive force.

As to excessive force, the Complaint merely alleges that Plaintiff was threatened with the application of force. (See Doc. No. 1 at 9 (alleging "threat[] to smash my face in the floor")). It does not contain any allegation that physical force was applied to Plaintiff for the purpose of causing harm. See Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) ("core judicial inquiry" in considering excessive-force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm") (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). Thus, the Complaint's allegations fail to support this claim.

This leaves Plaintiff's claim that he was confined under conditions that amounted to cruel and unusual punishment. "In the context of 'conditions of confinement' cases, the Eighth Amendment is concerned only with 'deprivations of essential food, medical care or sanitation' or 'other conditions intolerable for prison.'" Flanory v. Bonn, 604 F.3d 249, 253 (6th Cir. 2010) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). There are two components to such a claim charging a prison official with imposing or tolerating harmful conditions, one objective and one subjective. "[A] prisoner must plead (1) that 'the failure to protect from risk of harm [was] objectively sufficiently serious,' and (2) that 'the official acted with deliberate indifference to inmate health or safety.'" Taylor v. Larson, 505 F. App'x 475, 477 (6th Cir. 2012) (quoting Mingus v. Butler, 591 F.3d 474, 480 (6th Cir. 2010)).

Courts have found the requirement of objective seriousness unmet in cases involving denial of hygiene items and clean clothing for a period of days, as Plaintiff alleges here. See Flanory, 604 F.3d at 254 (citing cases). However, the Sixth Circuit in Taylor considered a scenario similar to the one presented in the instant case, where the prisoner was placed in a cell allegedly "covered

with fecal matter" and held there for three days in retribution for, at worst, a trivial display of misconduct. 505 F. App'x at 477. The court found that such treatment was sufficiently, objectively serious in that it "falls below the standard of decency that inheres in the Eighth Amendment." Id. (quoting Brown v. Plata, 563 U.S. 493, 545 (2011); citing Farmer v. Brennan, 511 U.S. 825, 832 (1994) (holding that the Eighth Amendment "imposes duties" on prison officials to "provide humane conditions of confinement")). The court found "[a] closer question" with respect to the subjective element because the prisoner had not "clearly allege[d] . . . that the prison officials were aware of the condition in his cell but chose to do nothing about it." Taylor, 505 F. App'x at 477. Ultimately though, the court found that Taylor's subsequent filings "ma[de] clear that he complained about his conditions and that his complaints were ignored." Id.

Here, taking as true Plaintiff's allegations of an early-morning relocation following his disagreement with Nurse Lawrence and Cpl. Yevin the day before, to a cell with "dried urine and [feces] all over the floor" where he was made to lie face-down on multiple occasions, was stripped of his clothes, socks, and jumpsuit, and was denied the ability to clean both the cell and himself for days, he has established, for purposes of initial review, the existence of conditions posing an "objectively sufficiently serious" risk of harm. Moreover, with regard to the subjective component, he has alleged that Cpl. Yevin, Cpl. Bolden, Lt. Lane, and Sgt. Goodale knew of these conditions and, unlike Sgt. Bryant and Sgt. Thomas, approved of them or at least failed to do anything about them. These allegations—again, as in Taylor and for purposes of initial review—are sufficient to "satisfy the deliberate-indifference element" of an inhumane-conditions claim. 505 F. App'x at 478. Accordingly, Plaintiff's Eighth Amendment conditions-of-confinement claim will proceed against these Defendants.

Otherwise, the Complaint does not support any plausible right to relief for any violation of Plaintiff's constitutional rights based on other claims, or against other Defendants,[2] nor is the request for dismissal of the federal and state cases against Plaintiff (Doc. No. 1 at 12) relief that can be granted outside the province of habeas corpus. Muhammad v. Close, 540 U.S. 749, 750 (2004).

### III. CONCLUSION

As explained above, the Court finds that the Complaint states a nonfrivolous claim against Defendants Yevin, Bolden, Lane, and Goodale. The claim against these Defendants will proceed for further development, while all other Defendants will be dismissed.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Indeed, other than being named as Defendants, Boldie and Joseph are not mentioned elsewhere in the Complaint, and Bryant and Thomas are only alleged to have attempted to help Plaintiff. (See Doc. No. 1 at 9–10).