# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

ANTONIUS CARTER )
                                                            )

v. )           Case No. 3:22-cv-00730

                                                            )

MIMI LAWRENCE *et al.* )

**TO:  Honorable Waverly D. Crenshaw, Jr., United States District Judge**

## R E P O R T   A N D   R E C O M E N D A T I O N

By Order entered March 23, 2023 (Docket Entry No. 5), this *pro se* and *in forma pauperis* prisoner civil rights action was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Presently pending before the Court is the motion for summary judgment filed by Defendants Eric Yevin, Ky'Vari Bolden, Robert Goodale, and Jennifer Lane (Docket Entry No. 31), to which Plaintiff has responded in opposition.  For the reasons set out below, the undersigned respectfully recommends that the motion be **GRANTED** and this case be **DISMISSED**.

## I.  PROCEDRUAL BACKGROUND

Antonius Carter ("Plaintiff") is an inmate of the Tennessee Department of Correction ("TDOC") who is currently confined at the Bledsoe County Correctional Complex in Pikeville, Tennessee.  He filed this lawsuit *pro se* and *in forma pauperis* on September 20, 2022, seeking relief under 42 U.S.C. § 1983 for claims that his federal constitutional rights were violated in May 2022 at a time that he was in the custody of the Davidson County Sheriff's Office ("DCSO") and was

confined at the DCSO detention center in Nashville, Tennessee.  *See* Complaint (Docket Entry No. 1).

Upon initial review of his complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court found that Plaintiff stated a single, arguable claim that he was subjected to unconstitutional conditions of confinement at the detention center and allowed the claim to proceed against detention center staff members Eric Yevin ("Yevin"), Ky'Vari Bolden ("Bolden"), Robert Goodale ("Goodale"), and Jennifer Lane ("Lane").  *See* Memorandum Opinion (Docket Entry No. 4) at 6-7. All other claims raised by Plaintiff were dismissed.  *Id*. at 8.  After Defendants filed an answer (Docket Entry No. 15), a scheduling order was entered that provided for a period of pretrial activity in the case.  *See* Docket Entry No. 16.  A jury trial is demanded by the parties, but a trial has not been scheduled pending resolution of the motion for summary judgment.

## II.  PLAINTIFF'S CLAIM

After being involved in an altercation with a nurse at the detention center during the late evening of May 20, 2022, Plaintiff received three disciplinary reports and was placed on a "pie flap restriction."  *See* Docket Entry No. 32-5.  At approximately 4:15 a.m. the next morning, Defendants Yevin and Bolden moved Plaintiff from his cell to a different cell, Cell L-11, where he was made to lie face first on the floor and his clothes, except for a t-shirt and boxer shorts, were taken because he was being placed on a property restriction.  The next day, Plaintiff's jumpsuit, socks, and shoes were returned to him.  A few days later, Plaintiff was provided with other items, receiving cleaning supplies on May 24th and soap, shampoo, a towel and washcloth, and shower shoes on May 25th. Plaintiff remained in Cell L-11 until May 30th, when he was temporarily transferred to another facility.

2

Plaintiff alleges that Cell L-11 "was nasty and filthy and had dried urine and shit all over the floor [where] you can smell it," that the cell wasn't cleaned before he was put in it, and that "they wouldn't let me clean it. *See* Complaint at 8. He asserts that, because of his "pie flap restriction," he was required to lie down on the floor multiple time and that he only received his jumpsuit and shoes, as well as his hygiene items, after other staff members noticed that he was without those items. *Id*. at 9. He asserts that his cell had a shower in it but that he did not shower for several days because he did not have soap or a towel until he received hygiene items on May 25th, and that he developed a rash on the inside of his upper thighs while he was in the cell that was painful and bleeding and for which the medical staff gave him a cream for treatment. *Id*. at 9-10.

Although Plaintiff does not clearly set out in his complaint the actions of Defendants Lane and Goodale, he alleges that they knew of the conditions and approved of what took place. He also asserts that, "I wrote a grievance and I spoke to different staff about the issues I was having, and they never investigated the truth about the issues I was having." *See* Complaint at 5. He further asserts that the response from the authorities was "that they were going to look into it and said that staff spoke with them and told them they did nothing wrong, but the cameras say otherwise." *Id*. at 6. Undisputed evidence that is before the Court as part of the summary judgment motions shows that, on May 24th, Plaintiff submitted the following written grievance:

> At approx. 8:45 p.m., Lt. Lane and Sgt. Goodale brought me outside my cell bare footed with no shoes or no jumpsuit in my boxers to go to see Medical in the Triage room. I wasn't being disruptive or anything the pod hasn't been cleaned in over a month it's unsanitary for me to walk bare foot across the floor in the pod, my cell is nasty they won't clean it or let me clean it its all kinds of nats flying in the cell, but they keep laying me flat down on the dirty floor everytime its time for me to come out of my cell, the cell hasn't been cleaned before or since I been in my cell.

*See* Docket Entry No. 32-3 and 32-4.

3

### III. MOTION FOR SUMMARY JUDGMENT

On April 12, 2024, Defendants filed the pending motion for summary judgment. The motion is supported by a memorandum of law (Docket Entry No. 33), a statement of undisputed material facts (Docket Entry No. 34), and the declaration (Docket Entry No. 32) and exhibits attached thereto (Docket Entry Nos. 32-1 through 32-6) of DCSO Records Manager Tom Davis.

Defendants first argue that Plaintiff failed to satisfy the statutory requirement imposed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), that he administratively exhaust his claim prior to bringing the claim in a lawsuit. Defendants assert that although Plaintiff submitted a written grievance about the conditions in his cell, he did not appeal from the response to this grievance as is permitted by the grievance policy and therefore failed to pursue the grievance though all available steps.

Defendants next argue that the evidence does not support Plaintiff's claim. Defendants admit that Plaintiff was moved into Cell L-11 and remained there for several days, and they do not dispute that Plaintiff was made to lay on the floor as alleged, but they contend that this was done in accordance with DCSO policy and practice given the restrictive housing status for Plaintiff at the time. They argue that DCSO records show that all cells in Unit 4D were cleaned, and that trash was removed on May 21, 2022, and they further assert that Plaintiff was free to shower at any time because his cell was equipped with a shower. (Statement of Undisputed Material Facts at ¶¶ 10-16.) Defendants argue that, at the most, Plaintiff shows merely that he was subjected to unsanitary conditions for only a short period of time, which is not sufficient to support a claim that his conditions of confinement were unconstitutional. Defendants also argue that Plaintiff's allegations are not sufficient to show that they were subjectively aware of the alleged conditions of the cell and

4

that they acted in a culpable manner with respect to those conditions. Finally, Defendants raise the defense of qualified immunity.

In response to the motion, Plaintiff argues that that Defendants' request for summary judgment should be denied and that he should be permitted to go to trial on his claim. (Docket Entry No. 40.) Plaintiff supports his response with copies of Defendants' responses to his written interrogatories and requests for admissions (Docket Entry No. 40-1), his own declaration (Docket Entry No. 41), a response to Defendants' statement of undisputed material facts (Docket Entry No 42), and his own statement of disputed material facts (Docket Entry No. 43).

In response to Defendants' PLRA defense, Plaintiff asserts that: (1) he never received a copy of a response to his grievance; (2) Defendants provide no evidence supporting their contention that he received a response; (3) although the grievance response provided by Defendants as an exhibit to their motion contains boxes that can be filled out indicating when an inmate was notified of the response, the boxes on the response are blank; and, (4) the DCSO grievance policy does not provide for steps an inmate is to take if he does not receive a response to his grievance. Plaintiff supports his assertions with his own declaration. (Plaintiff's Declaration at ¶¶ 21-23.) Plaintiff argues that Defendants have not met their burden of showing that he did not comply with the PLRA's exhaustion requirement and that, at a minimum, he has shown the existence of genuine issues of material fact on this issue. (Plaintiff's Response at 2-5.)

In response to Defendants' remaining arguments, Plaintiff contends that Defendants have not rebutted his allegations that he went for several days without cleaning supplies and without items with which to shower, that he was required to lie on the floor multiple time a day due to being on the "pie flap restriction," and that he developed a rash while in Cell L-11. He further asserts that, by his

5

declaration, he has provided evidence to support his allegations that the floor of the cell had urine and feces all over it, that these conditions were obvious, and that Defendants ignored his complaints about the cell and his requests for cleaning supplies. He points out that existing case law holds that evidence of an inmate's exposure to human wastes can support a finding of a constitutional violation. Plaintiff argues that, at a minimum, he has raised genuine issues of material fact that require the denial of Defendants' request for summary judgment. (*Id.* at 6-16.)

In a reply, Defendants argue that that Plaintiff's supporting declaration should be stricken or disregarded to the extent that it contradicts or goes beyond the factual allegations contained in his verified complaint. Specifically, Defendants assert that the Court should strike or disregard Plaintiff's declaration statements that he did not receive a response to his grievance, that urine and feces were visible in his cell, and that he complained to Defendants about the condition of his cell. (Docket Entry No. 46.) Defendants further argue that Plaintiff failed to make an affirmative effort to pursue an appeal, that the case law he set out in support of his claim is inapplicable, and that his supporting evidence is not sufficient to support a finding of constitutional liability against Defendants or to defeat their assertion of qualified immunity. (*Id.*) Defendants' response to Plaintiff's statement of disputed material facts essentially tracks the arguments made in their reply and also sets forth an argument that Plaintiff's statement fails to comply with Local Rule 56.01. (Docket Entry No. 47.)

Although Plaintiff sought to file a sur-reply, the Court denied this request because the briefing schedule set by the Court for the motion for summary judgment specifically did not permit the filing of a sur-reply. *See* Order entered August 6, 2024 (Docket Entry No. 50).

6

## IV. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, at 249-50. "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In other words, to defeat summary judgment, the party opposing the motion must present

affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (*quoting Anderson*, 477 U.S. at 252).

## V. PLRA EXHAUSTION

Pursuant to 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA"), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies before filing a lawsuit. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). If there is a grievance procedure available to inmates, the prisoner plaintiff must present his grievance through "one complete round" or through all the steps of the administrative grievance procedure in order to satisfy the exhaustion requirement. *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *abrogated on other grounds*, *Woodford v. Ngo*, 548 U.S. 81 (2006); *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). The failure of a prisoner plaintiff to satisfy the exhaustion requirement is an affirmative defense that a defendant must raise and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Summary judgment on a PLRA exhaustion defense is appropriate only if a defendant establishes the absence of a "genuine dispute as to any material fact" regarding non-exhaustion. *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)

Once the defense of failure to exhaust is raised and supported by the moving party, the prisoner plaintiff must present affirmative evidence showing that he has complied with the PLRA's requirement of exhaustion. *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011). Generally, to avoid dismissal for failure to exhaust in the face of evidence from a defendant that a prisoner plaintiff failed to pursue grievance remedies, the prisoner's only recourse is to show that the grievance process at the Jail was not "available." *Ross v. Blake*, 578 U.S. 632, 642 (2016). In *Ross*, the Supreme Court clarified that there are some factual scenarios under which an inmate's attempt to

8

use the grievance process is so compromised that the administrative remedy is made effectively "unavailable" and, thus, an inmate's duty to exhaust available remedies does not come into play. *Id.* at 643-44.

## VI. QUALIFIED IMMUNITY

Qualified immunity shields public officials from civil liability under 42 U.S.C. § 1983 unless their actions violate clearly established rights. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. *Reich v. City of Elizabethtown, Ky.*, 945 F.3d 968, 978 (6th Cir. 2019); *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).

Once the defense of qualified immunity is raised and supported by the moving party, the ultimate burden to prove that a defendant is not entitled to qualified immunity lies with the plaintiff. *Kennedy v. City of Cincinnati*, 595 F.3d 327, 336 (6th Cir. 2010). "[A] defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011). The Court has the discretion to address the prongs of the qualified immunity analysis in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## VII. LIABILITY UNDER 42 U.S.C. § 1983

Section 1983 of Title 42 permits individuals to bring civil claims based on violations of "the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a claim under § 1983, Plaintiff must allege and show

9

two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

## VIII. CONSTITUTIONAL STANDARDS

In its initial review of the complaint, the Court presumed that Plaintiff was a convicted inmate. In response to the motion for summary judgment, Plaintiff declares that he was confined as a pretrial detainee in May 2022. Defendants do not agree or disagree with this declaration. *See* Reply at 4. Given the record before the Court, Defendants' failure to clarify the issue,[1] and the information that is contained in the filings of the federal criminal case that was brought against Plaintiff, *United States v. Carter*, No. 3:21-cr-00226, it appears that Plaintiff was a pretrial detainee at the time of the events at issue and that his claim is based upon the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment. *See Greene v. Crawford Cnty., Michigan*, 22 F.4th 593, 605 (6th Cir. 2022) ("the Eighth Amendment does not apply to pretrial detainees").

Although the Eighth Amendment does not apply, the Due Process Clause "offers protections to pretrial detainees that at least match those afforded to convicted prisoners under the Eighth Amendment." *Lawler v. Hardeman Cty.*, 93 F.4th 919, 926 (6th Cir. 2024). As it pertains to Plaintiff's claim that he was subjected to unsanitary living conditions, the Fourteenth Amendment "guarantees a right to 'humane conditions of confinement,' including 'adequate food, clothing, shelter, and medical care.'" *Ruiz-Bueno v. Scott*, 639 F.App'x 354, 359 (6th Cir. 2016) (citing

---

[1] Despite being in a position to accurately identify Plaintiff's status as of May 2022, Defendants merely rely on the Court's assertion that it "takes judicial notice" that Plaintiff was in federal custody awaiting sentencing and that he had active state sentences on multiple convictions at the time of initial review of his complaint in March 2023. *See* Reply at 4.

*Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Such a claim has both an objective and a subjective component. *Id*.

The objective component requires a showing that the living conditions complained about are "sufficiently serious." *Brawner v. Scott County, Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021). Generally, this requires evidence that the detainee has been deprived of the minimal civilized measure of life's necessities, *see Farmer*, supra; *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986), and subjected to extreme or grave deprivations. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Rhodes*, *supra*. The subjective component requires a showing that the defendant "acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 317 (6th Cir. 2023) (citing *Brawner*, 14 F.4th at 596). While this standard requires a lesser showing of a defendant's culpability than for an Eighth Amendment claim, the standard nonetheless retains the truism that a showing of negligence is not sufficient to support a constitutional claim. *Brawner*, 14 F.4th at 596.

## IV. ANALYSIS AND CONCLUSIONS

Although Plaintiff's allegations were sufficient to permit his claim to proceed past initial review, the claim warrants dismissal when challenged by the request for summary judgment. After review of the parties' arguments and the record, the Court finds that genuine issues of material fact do not exist that require resolution at trial and that summary judgment should be granted to Defendants.

As a preliminary matter, the Court finds no merit in Defendants' argument that Plaintiff's declaration, in whole or in part, should be stricken or disregarded as a "sham" or as somehow

11

contrived to create a genuine issue of material fact. When evaluating a party's declaration that is challenged as being contradictory to prior sworn testimony, the court first determines whether the declaration "directly contradicts the nonmoving party's prior sworn testimony." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006). If the court finds a direct contradiction, the court should not consider the declaration absent a persuasive justification for the contradiction. *Id*. But if no direct contradiction exists, the court should not strike or disregard the declaration unless the court determines that the declaration constitutes an attempt to create a sham factual issue. *Id*.

Here, the Court finds that Plaintiff's declaration statement that he did not receive a response to his grievance does not clearly contradict the allegations set out in his verified complaint. At no place in Plaintiff's complaint does he assert that he received a response to his written grievance. Further, his statement that he received a response from the staff that "they were going to look into it and said that staff spoke with them and told them they did nothing wrong, but the camera say otherwise," *see* Complaint at 6, is most reasonably read as explaining the response that he received to his verbal complaints not to his written grievance. The Court also does not find that Plaintiff's declaration statements about the other issues raised by Defendants in their reply – the condition of his cell and Defendants' awareness of the conditions – contradict the allegations of his complaint or otherwise expand upon the complaint's factual allegations in a manner that is improper. Indeed, the Court would expect that the declaration of a plaintiff submitted in response to a summary judgment motion would contain more specific and detailed allegations than those contained in the complaint, the purpose of which is to simply give fair notice of the factual basis for a plaintiff's claims.

The Court likewise finds no merit in Defendants' PLRA exhaustion. Although Defendants assert that Plaintiff failed to file a grievance appeal after receiving a response to his grievance,

12

Plaintiff has set forth his own declaration that he never received the grievance response. *See* Plaintiff's Declaration at ¶ 21. Defendants have not provided evidence that actually rebuts this declaration and that shows that Plaintiff received the grievance response. The Inmate Grievance Report filed by Defendants in support of their motion simply fails to demonstrate that Plaintiff received the report.

Indeed, the report suggests otherwise. The boxes contained in the report, which are supposed to be filled out, indicating that the inmate was notified of the response and on what date are blank. *See* Docket Entry No. 32-4. In their reply, Defendants assert that the Inmate Grievance Report contains a box titled "Date Response Received" that contains the date 06/02/2022, which Defendants argue shows that the response was received by Plaintiff. *See* Reply at 3 n.1. This is not a strong argument.

First, Defendants provide no evidence supporting their explanation of what the "Date Response Received" box is intended to indicate. Second, the most reasonable reading of the Inmate Grievance Report form, based on the location of the "Date Response Received" box and the overall form, is that the 06/02/2022 date refers to the date on which the responding officer made and inputed his response to the grievance into the computerized Jail Management System. At the very least, a factual question exists about this issue, which negates a finding that summary judgment is warranted on the PLRA exhaustion defense. *Risher*, 639 F.3d at 240.

In their reply, Defendants argue that the Court need not determine whether the grievance process was unavailable to Plaintiff due to the lack of a response because Plaintiff failed to take affirmative steps to pursue an appeal even if a response was not provided to him. *See* Reply at 2-3. This argument is similarly unpersuasive. The affirmative steps than an inmate must take are those

13

that are provided for and required by the grievance policy at issue. *See Napier*, 636 F3d. at 224. In the instant case, the DCSO grievance policy, Policy #1-3.540, provides that "[a]n inmate may file one appeal within five working days of receiving the response." *See* Docket Entry No. 32-1 at 5. There is no provision in the grievance policy that permits an inmate to pursue an appeal notwithstanding the lack of a response or that deems a grievance to be denied and appealable if no response is received by the inmate. The instant case is therefore factually distinguishable from two cases relied on by Defendants, *Lee v. Willey*, 789 F.3d 673 (6th Cir. 2015), and *Hartsfield v. Vidor*, 199 F.3d 305 (6th Cir. 1999), because the grievance policies at issue in both cases permitted an inmate to pursue an appeal if a response to the initial grievance was not received.

Given the factual situation presented by the instant case, the more analogous decision from the Sixth Circuit is *Troche v. Crabtree*, 814 F.3d 795 (6th Cir. 2016). In *Troche*, the defendant raised a PLRA exhaustion defense because the inmate failed to file a third-step appeal after not receiving a response to his second-step appeal. The Sixth Circuit found that summary judgment was not warranted based on the defense because the grievance policy at issue did not provide for an appeal avenue if a response was not provided to the inmate at the second step. 52 F.4th at 801-02. The Sixth Circuit specifically noted that, "it cannot be said that an inmate did not exhaust his administrative remedies because he failed to do something not specified, outlined, or required by his prison's grievance procedure." *Id*. at 801. The Court finds *Troche* controlling in this case and that it requires the denial of Defendants' PLRA exhaustion defense.

The Court now turns to Defendants' remaining summary judgment arguments. As set out below, the Court finds that the record contains insufficient evidence showing that a constitutional violation occurred. Accordingly, summary judgment is warranted in favor of Defendants.

14

After review of the evidence in the record, the Court finds that there are factual disputes about several matters: (1) whether Cell L-11 was clean upon Plaintiff's placement in the cell or whether it had dried urine and feces on the floor of the cell that was obvious; (2) whether Defendants were aware of the condition of the cell upon Plaintiff's placement in the cell; (3) whether Plaintiff complained to Defendants about the condition of his cell; and (4) whether Plaintiff asked Defendants for and was denied cleaning supplies. Plaintiff argues that these factual disputes constitute genuine issues of material fact that preclude the entry of summary judgment in favor of Defendants and that require that his claim proceed to trial.

The Court disagrees. Even if these factual disputes are resolved in favor of Plaintiff, the evidence before the Court is not sufficient to satisfy the objective component of his claim. No reasonable jury could find that Plaintiff was subjected to living conditions that were sufficiently severe to amount to a violation of his constitutional rights.

First, although the Court certainly does not discount the serious health risk that can arise from exposure to human waste, the evidence before the Court, even when viewed in the light most favorable to Plaintiff, does not show an egregious or grave scenario. Although Plaintiff declares that there was urine and feces "all over the floor" that could be seen and smelt, he states in his complaint that this waste consisted of only "dried" urine and feces. *See* Complaint at 1. Additionally, Plaintiff did not assert in his written grievance that there was any human waste on the floor of his cell and he described the cell only as "nasty." *See* Docket Entry No 32-4. The condition of Plaintiff's cell was markedly different than the egregious conditions at issue in the cases that he relies upon in his opposition to the motion for summary judgment. *See Taylor v. Riojas*, 592 U.S. 7 (2020) (inmate's "cell was covered, nearly floor to ceiling, in massive amounts of feces: all over the floor, the ceiling,

the window, the walls, and even packed inside the water faucet"); *Berkshire v. Dahl*, 928 F.3d 520, 538 (6th Cir. 2019) (restrained, mentally ill prisoner was forced to lie in his own urine and feces for six to seven hours); *Taylor v. Larson*, 505 F.Appx. 475, 477 (6th Cir. 2012) (prisoner was placed in a cell covered with fresh fecal matter); Jabbar-*El v.Johnson*, 872 F.2d 1026 (6th Cir. 1989) (plaintiff was placed in a cell infested with vermin, feces on the wall, and the absence of lighting, soap, toothbrush, and cleaning supplies); *Chapple v. Franklin Cnty. Sheriff's Officers FCCC 1 & 2*, 2022 WL 16734656, at *4 (S.D.Ohio Nov. 7, 2022) (inmate placed in a cell that had blood and feces "all over the floors, walls, sink & toilet"). The several out-of-district cases relied upon by Plaintiff, *see* Response Memorandum at 7, are similarly distinguishable because the facts of those cases primarily involve the exposure of inmates to raw sewage and human wastewater.

Additionally, although Plaintiff declares that he was not provided with shower items until May 25, 2022, *see* Declaration at ¶ 17, it is nonetheless undisputed that he had access in his cell to running water and to a shower. Even if Plaintiff did not have shower supplies, he had the ability to rinse himself off with water during the 3-to-4-day period when he asserts that he could not clean his cell and when he had to periodically lie on the floor for security reasons. While this is not an ideal situation, it does not, for all the reasons discussed herein, rise to a constitutional violation.

Finally, although Plaintiff was confined in Cell L-11 for approximately nine days, it is undisputed that he was provided with cleaning supplies on May 24, 2022. *See* Plaintiff's Declaration at ¶ 15. The time period when Plaintiff was confined in a what was in all likelihood an unsanitary cell was between 3 to 4 days at the most – May 21 to May 24. Short stays in unpleasant conditions normally are not sufficient to implicate the Constitution. *See e.g. Bell*, 441 U.S. at 543 ("We simply do not believe that requiring a detainee to share toilet facilities and [an] admittedly

16

rather small sleeping place with another person for generally a maximum period of 60 days violates the Constitution."); *Lamb v. Howe*, 677 F.App'x 204, 209 (6th Cir. 2017) ("Conditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount."). Court have routinely found that the temporary exposure to unsanitary cell conditions does not meet the objective component of a constitutional claim. *See Rone v. Daviess Cnty. Det. Ctr.*, 2023 WL 5192068, at *2 (W.D. Ky. Aug. 11, 2023) (collecting cases); *Perkins v. Bailey*, 2021 WL 868887, at **8-9 (W.D. Mich. Mar. 9, 2021) (same).

The reality of the prison environment is that the floors of prison cells are more likely than not unsanitary, or in Plaintiff's words "nasty." There is no clear line of demarcation for how unsanitary a prison cell needs to be before it crosses into the realm of an unconstitutional condition of confinement. However, the Court finds that the Sixth Circuit's decision in *Dykes v. Benson*, 2022 WL 19076614 (6th Cir. 2022), provides useful guidance for the case at hand and requires that summary judgment be granted to Defendants.

In *Dykes,* the trial court granted summary judgment to defendants on a conditions of confinement claim in which the prisoner plaintiff alleged that he was placed in "a filthy cell with feces and unknown substances on the walls and a toilet smelling of feces and urine and that they denied his request for cleaning supplies." 2022 WL 19076614 at *5. The Sixth Circuit affirmed the grant of summary judgment, noting that while the trial court had taken the plaintiff's allegations as true, it was nonetheless undisputed that the plaintiff had been provided with cleaning supplies three days after being placed in the cell, and then finding that the plaintiff's temporary exposure to the unsanitary conditions did not amount to a constitutional violation. *Id*. at *6. The *Dykes* case is directly on point with the fact of Plaintiff's claim.

17

# RECOMMENDATION

Based on the foregoing, it is respectfully **RECOMMENDED** that the motion for summary judgment filed by Defendants Eric Yevin, Ky'Vari Bolden, Robert Goodale, and Jennifer Lane (Docket Entry No. 31) be **GRANTED** and that this action be **DISMISSED WITH PREJUDICE**.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.03(b)(1). A failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any other party wishing to respond to the objections shall file a response within fourteen (14) days after being served with a copy of such objections. *See* Federal Rule 72(b)(2) and Local Rule 72.03(b)(2).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

18